**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| PROLOGIS,<br><br>       Plaintiff,<br><br>  v.<br><br>THE MEN'S WEARHOUSE, INC.,<br><br>       Defendant. | CIVIL ACTION NO.<br><br>_____ |

## COMPLAINT

Plaintiff ProLogis brings this Complaint against Defendant The Men's Wearhouse, Inc. to recover response costs, lost rents, property damages, attorney's fees, costs, expenses, and other damages related to the contamination of Plaintiff's property by Defendant in the course of Defendant's dry cleaning operations. In support of these claims, Plaintiff alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.

Plaintiff ProLogis is a Maryland real estate investment trust with its principal place of business at 4545 Airport Way, Denver, Colorado 80239. ProLogis was previously named Security Capital Industrial Trust. For purposes of

this Complaint, both Security Capital Industrial Trust and ProLogis are referred to as "ProLogis" or "Plaintiff."

2.

Defendant Men's Wearhouse is a corporation organized under Texas law with its principal place of business at 6380 Rogerdale Road, Houston, Texas 77072. Men's Wearhouse is subject to jurisdiction in this Court and may be served through its registered agent, CT Corporation System, 1201 Peachtree Street NE, Atlanta, Georgia 30361.

3.

The Men's Wearhouse, Inc. is the successor to After Hours Formalwear, Inc., which in turn was the successor to Mitchell's Management Corporation, including its subsidiary, Mitchell's Formal Wear, Inc. Men's Wearhouse, as the corporate successor, is legally responsible for the liabilities of its predecessor entities. For purposes of this Complaint, Mitchell's Formal Wear, Inc., After Hours Formalwear, Inc., and The Men's Wearhouse, Inc. are all referred to as "Men's Wearhouse" or "Defendant."

4.

This Court has personal jurisdiction over Men's Wearhouse because Men's Wearhouse carries on a continuous and systematic part of its general business in

Georgia.  Men's Wearhouse is a chain of retail stores that sells men's clothing and accessories and rents men's formalwear.  Men's Wearhouse has many locations in Georgia.

5.

Pursuant to 28 U.S.C. § 1331, this Court has federal-question jurisdiction over this lawsuit because Plaintiff raises claim under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. ("CERCLA"), and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims.  In addition, this Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

6.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because it is the district in which a substantial part of the events giving rise to the claim occurred and in which the property that is the subject of the action is located.

## FACTUAL BACKGROUND

### 7.

Plaintiff owns property located at 4000-4030 Pleasantdale Road, Atlanta, DeKalb County, Georgia 30340 ("the Property"). This Property contains two buildings with space for a number of commercial businesses.

### 8.

Defendant leased a portion of the Property located at 4030-A Pleasantdale Road, Atlanta, DeKalb County Georgia 30340 ("Leased Property") beginning August 1, 1980 and continuing through January 31, 2000. Defendant cleaned clothing on the Leased Property using hazardous chemicals including perchloroethylene ("PCE").

### 9.

In the original Lease Agreement dated July 17, 1980 ("Lease"), a copy of which is attached as Exhibit "A," Defendant agreed to maintain the Leased Property in good and clean condition, and to make all repairs necessary to maintain the Property in such condition.

### 10.

In particular, Paragraph 3 of the Lease provides: "Tenant shall comply with all governmental laws, ordinances, and regulations applicable to the use of the

premises, and shall promptly comply with all governmental orders and directives for the correction, prevention and abatement of nuisances in or upon, or connected with, the premises, all at Tenant's sole expense. Tenant shall not permit any objectionable or unpleasant odors, smoke, dust, gas, noise or vibrations to emanate from the premises, nor take any other action which would constitute nuisance or would disturb or endanger any of the other tenants of the building in which the premises are situated or reasonably interfere with their use of the respective premises."

## 11.

Paragraph 5 of the Lease further states: "Tenant shall repair and pay for any damage caused by the negligence of Tenant, or Tenant's employees, agents or invitees, or caused by Tenant's default thereunder."

## 12.

In addition, Paragraph 6.A of the Lease states: "Tenant shall at its cost and expense keep and maintain all parts of the premises (except those for which landlord is expressly responsible under the terms of this lease) in good condition, [normal wear and tear excepted,] promptly making all necessary repairs and replacements . . . ."

13.

Defendant executed an Amendment to the Lease Agreement, a copy of
which is attached as Exhibit "B," on August 25, 1989, and later executed a Second
Amendment to Lease, a copy of which is attached as Exhibit "C," on February 3,
1994.  These amendments to the Lease extended the duration of the lease and made
certain other modifications.  These amendments, however, did not alter
Defendant's obligation maintain the Leased Property in good and clean condition,
and to make all repairs necessary to maintain the Property in such condition, as set
forth above.

14.

While Defendant was using PCE on the Leased Property, PCE was listed as
a hazardous substance pursuant to federal environmental laws.  Under federal and
state environmental laws, spills of PCE were classified as spills of a hazardous
waste.  By the early 1980s it was known throughout the dry cleaning business that
spills of PCE would migrate through concrete and contaminate soil and
groundwater.

15.

Defendant spilled and otherwise released PCE on the Leased Property.  The
PCE spills and releases contaminated soil and groundwater on the Leased Property,

on other portions of Plaintiff's Property, and even areas beyond Plaintiff's Property.

16.

ProLogis acquired all rights and obligations under the Lease Agreement and the two amendments to the Lease Agreement on January 6, 1995.

17.

In 1998, Plaintiff discovered the presence of PCE contamination on the Property and demanded that Defendant cleanup the Property and remove the PCE contamination.  On June 1, 1998, Plaintiff and Defendant entered into an Environmental Agreement, a copy of which is attached as Exhibit "D," in which Defendant acknowledged that "the presence of PCE in the soil and groundwater beneath the Property in the areas used by Mitchell's for its on-site drycleaning operations is associated with Mitchell's on-site dry cleaning operations." Defendant further agreed that it would pay to investigate to the extent of the PCE contamination and then "perform appropriate and reasonable remediation activities at the Property."

18.

Under the terms of the Environmental Agreement, disputes regarding the scope of and extent of Defendant's cleanup obligations are to be resolved by

arbitration.  The Environmental Agreement, however, expressly preserves the right of the parties to bring any other claims they may have, including claims regarding the contamination and its effect on the value of the Property.  *See* Environmental Agreement ¶ 10 (stating that the arbitration requirements "shall not limit either party's right to assert other claims or defenses regarding the PCE Contamination and its effect on the value of the Property").

19.

In September 2001, the parties entered into a Tolling Agreement, to toll the running of any statute of limitations on any and all causes of action that Plaintiff may assert against Defendant relating to any of the events, conditions, or claims associated with the Defendant's contamination of the Property.  This Tolling Agreement has been extended numerous times.  The most recent extension expires March 1, 2011.

20.

In July 2009, Defendant discovered PCE vapors from the contamination in the area where Defendant spilled PCE.  For a period of time during 2009-2010, Plaintiff was unable to lease the space that Defendant had formerly leased as a result of the discovery of PCE vapors present in the air on a part of the Property.

21.

Plaintiff has provided Defendant thirteen (13) years to cleanup the Property. Defendant still has not satisfied its cleanup obligations under the Lease and the Environmental Agreement.

22.

Soil and groundwater on Plaintiff's Property are still contaminated with PCE at levels that exceed applicable cleanup standards under Georgia environmental laws and the Environmental Agreement.

23.

Plaintiff provided Defendant with written notice of its continued non-compliance in an e-mail dated December 7, 2011, and in a letter dated February 25, 2011.

24.

Defendant has refused to perform the additional work required to satisfy its cleanup obligations, has discontinued any further remediation of the Property, and has abandoned responsibility for operating the vapor extraction system.

25.

As a result, Plaintiff intends to initiate arbitration proceedings based on Defendant's failure to satisfy its cleanup obligations. Plaintiff is not seeking in this

action to litigate the extent and scope of Defendant's cleanup obligations. Rather,

Plaintiff here asserts claims to recover response costs, lost rents, property damages,

attorney's fees, costs, expenses, and other damages related to the contamination of

Plaintiff's property by Defendant and its dry cleaning operations.

## COUNT I: CERCLA § 107

26.

Plaintiff hereby incorporates by reference the allegations contained in

Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27.

Section 107(a) of CERCLA holds owners, operators, transporters, and

generators liable when there is a release of a hazardous substance into the

environment. 42 U.S.C. § 9607(a).

28.

PCE is a hazardous substance for purposes of CERCLA. *See* 40 C.F.R. §

302.4.

29.

During Defendant's dry cleaning operations on the Leased Property, PCE

was released into the environment.

30.

At the times when PCE was released into the environment on the Leased Property, Defendant was the tenant of the Leased Property and the operator of the dry cleaning operations on the Leased Property. Defendant thus qualifies as an "owner or operator" for purposes of CERCLA.

31.

Further, and as Defendant has previously acknowledged, the presence of PCE in the soil and groundwater beneath the Property is the result of Defendant's on-site dry cleaning operations. Defendant thus qualifies as a generator for purposes of CERCLA.

32.

Under CERCLA, owners, operators, transporters and generators are responsible for the costs of investigation and remediation, defined as "response costs" under CERCLA. 42 U.S.C. § 9601(25).

33.

Plaintiff has incurred response costs within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), related to the release of PCE on the Leased Property.

34.

Defendant is liable under CERCLA as owner, operator, and generator, and thus is responsible for response costs incurred by Plaintiff in response to the release of PCE on its Property.

## COUNT II:  TRESPASS

35.

Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36.

Defendant negligently, intentionally, wantonly, willfully, maliciously, or recklessly stored, managed, handled, disposed of, and released PCE on the Property so as to allow those hazardous chemicals to invade the soil and groundwater of the Property.  These releases were not sanctioned or permitted by Plaintiff at any time.

37.

The PCE released by Defendant has migrated from the Leased Property to other areas of Plaintiff's Property and beyond.

38.

Plaintiff has been deprived of the full use and enjoyment of its Property as a result of Defendant's acts and omissions.

39.

The release of PCE by Defendant onto the Property constitutes a trespass. This trespass is continuing as the PCE on the Property continues to migrate.

40.

As a direct and proximate result of the trespass, Plaintiff has suffered losses, costs, injuries, and damages in an amount to be proved at trial.

## COUNT III:  NUISANCE

41.

Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42.

Defendant negligently, intentionally, wantonly, willfully, maliciously, or recklessly stored, managed, handled, disposed of, and released PCE on the Property so as to allow those hazardous chemicals to invade the soil and groundwater of the Property.

43.

The PCE released by Defendant has migrated from the Leased Property to other areas of Plaintiff's Property and beyond.

44.

In allowing the releases of PCE on the Property, Defendant acted in a manner that violates state laws and regulations.

45.

Plaintiff has been deprived of the full use and enjoyment of the Property as a result of Defendant's acts and omissions.

46.

The release of PCE by Defendant onto the Property constitutes a nuisance. This nuisance is continuing as the PCE on the Property continues to migrate.

47.

Plaintiff notified Defendant of the nuisance created by the release of PCE to soil and groundwater on the Property. Defendant, however, has refused to fully abate the nuisance and remediate the Property.

48.

As a direct and proximate result of the nuisance, Plaintiff has suffered losses, costs, injuries, and damages in an amount to be proved at trial.

## COUNT IV:  NEGLIGENCE

### 49.

Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 48 of this Complaint as if fully set forth herein.

### 50.

Defendant negligently, intentionally, wantonly, willfully, maliciously, or recklessly stored, managed, handled, disposed of, and released PCE on the Property so as to allow those hazardous chemicals to invade the soil and groundwater of the Property.

### 51.

Defendant owned a duty to the owners of the Property to avoid releasing PCE to the soil and groundwater on the Property.

### 52.

Defendant's negligence resulted in the release of PCE to soil and groundwater on the Property.

### 53.

Defendant knew or should have known that its negligent acts and omissions would result in harm to Plaintiff.

54.

As a direct and proximate result of Defendant's negligence, Plaintiff has incurred costs and damages, plus interest, in an amount to be proved at trial.

## COUNT V:  BREACH OF CONTRACT

55.

Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56.

The Lease entered into between Plaintiff and Defendant constitutes a valid contract and imposes certain obligations on Defendant.

57.

Defendant breached, at a minimum, the terms of Paragraphs 3, 5 and 6.A of the Lease by, among other things, releasing PCE onto the Property, creating and maintaining a nuisance on the Property, and refusing to fully repair and pay for damages caused by its release of PCE onto the Property.

58.

Defendant remains obligated to satisfy the requirements of Paragraph 3, 5, and 6.A of the Lease.  As set forth in Paragraph 24.F:  "All obligations of [either party] hereunder not fully performed as of the expiration or earlier termination of

the term of this lease shall survive the expiration or earlier termination of the term hereof, including without limitation . . . all obligations concerning the condition of the premises."

59.

Plaintiff has notified Defendant in writing that it must comply with its obligations under the Lease, including its obligations not to contaminate the property and to cleanup any contamination it caused.

60.

Defendant failed to comply with its obligations under the Lease. This failure constitutes an event of default under the Lease.

61.

As a direct and proximate cause of Defendant's breach of its obligations under the Lease, Plaintiff has incurred damages, plus prejudgment interest, in an amount to be proved at trial.

**COUNT VI:  ATTORNEYS' FEES AND EXPENSES**

62.

Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.

Pursuant to Paragraph 18 of the Lease, Defendant is liable for the reasonable attorneys' fees and expenses incurred by Plaintiff in enforcing the requirements of the Lease.

64.

In particular, Paragraph 18 of the Lease states: "If, on account of any breach or default by [either party] in [either party's] obligations under the terms and conditions of this lease, it shall become necessary or appropriate for the [other party] to employ or consult with an attorney concerning or to enforce or defend any of the [other party's] rights or remedies hereunder, the defaulting party agrees to pay any reasonable attorney's fees so incurred."

65.

Paragraph 18 of the Lease further provides that in the event of default, the Landlord (here the Plaintiff) may "do whatever Tenant is obligated to do under the terms of this lease; and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in thus effecting compliance with Tenant's obligations under this lease."

66.

Plaintiff has incurred and will continue to incur attorneys' fees and expenses related to Defendant's breach of the Lease. Plaintiff is therefore entitled to the recovery of these attorneys' fees and expenses.

67.

Further, Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense. Accordingly, Plaintiff is entitled to recover its expenses for attorneys' fees and costs from Defendant pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

a.      Enter judgment in favor of Plaintiff and against Defendant in an amount to be determined at trial for Plaintiff's response costs under CERCLA;

b.      Enter judgment in favor of Plaintiff and against Defendant in an amount to be determined at trial for damages resulting from Defendant's trespass;

c.      Enter judgment in favor of Plaintiff and against Defendant in an amount to be determined at trial for damages resulting from Defendant's nuisance;

d.     Enter judgment in favor of Plaintiff and against Defendant in an amount to be determined at trial for damages resulting from Defendant's negligence;

e.     Enter judgment in favor of Plaintiff and against Defendant in an amount to be determined at trial for damages resulting from Defendant's breach of contract;

f.     Enter judgment in favor of Plaintiff and against Defendant for any and all damages, including but not limited to lost rents, property damage, special damages, consequential damages, costs, expenses, and other damages related to the contamination of Plaintiff's property caused by Defendant's actions and omissions;

g.     Award Plaintiff its attorneys' fees and expenses pursuant to the terms of the Lease;

h.     Award Plaintiff its attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11; and

i.     Grant Plaintiff any and all other relief as the Court finds just and proper.

Respectfully submitted this 28th day of February, 2011.

KING & SPALDING LLP

 s/ Randy J. Butterfield
Randy J. Butterfield
   Georgia Bar Number 100120
Charles H. Tisdale
   Georgia Bar Number 712950
Emily Shingler
   Georgia Bar Number 311482
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone:  404-572-4600
Fax:  404-572-5100
E-Mail:  rbutterfield@kslaw.com
E-Mail:  ctisdale@kslaw.com
E-Mail:  eshingler@kslaw.com

*Attorneys for Plaintiff ProLogis*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing **COMPLAINT** was prepared in Times New Roman 14-point font, double-spaced, with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

 s/ Randy J. Butterfield          
Randy J. Butterfield
  Georgia Bar Number 100120
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone:  404-572-4600
Fax:  404-572-5100
E-Mail:  rbutterfield@kslaw.com

*Attorney for Plaintiff ProLogis*
